**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Del Carmen Hernandez, et al., | No. CV-24-00353-TUC-SHR |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Santa Cruz, et al., | |
| Defendants. | |

Pending before the Court is Defendant's Partial Motion to Dismiss for Failure to State a Claim (Doc. 32). The Motion to Dismiss is fully briefed. (Doc. 20; Doc. 36; Doc 37.) For the reasons set forth below, the Motion to Dismiss is denied in part and granted in part, and Plaintiffs are given leave to amend.

**I.   Factual Background[1]**

This dispute arises from an incident in which Defendant, Augustine Huerta, a

---

[1] For the purposes of resolving this Motion, the Court construes the facts in the light most favorable to Plaintiff. Facts herein are derived entirely from those in the First Amended Complaint (FAC). (*See* Doc. 20.)

Commander with the Santa Cruz County Sheriff's Department ("Defendant County"), fatally shot David Hernandez (the "decedent"). (Doc. 20 ¶¶ 1–2.) The shooting followed Defendant Huerta's brief attempt to make verbal contact with the decedent outside his residence as he appeared to be gardening. (Doc. 20 ¶¶ 26–40.)

Despite Defendant Huerta's attempts to speak with the decedent, the decedent "continued walking away." (*Id.* ¶ 31.) In an interview, Defendant Huerta claimed he had observed knives in the decedent's hands. (*Id.* ¶ 34.) At that time, Defendant Huerta contemplated using his taser to subdue the decedent. (*Id.* ¶ 36.) Because Defendant Huerta thought the taser might miss, he decided to use his gun. (*Id.*)

Then, Defendant Huerta repositioned himself so the home across the street would not be in the line of fire of a potential bullet. (*Id.* ¶¶ 37–38.) After Defendant Huerta repositioned himself, the decedent "raised his arms with the knives." (*Id.* ¶ 39.) "Defendant Huerta fired five rounds," striking the decedent each time in the back. (*Id.* ¶¶ 2, 40.) The decedent fell to the ground, still alive and bleeding. (*Id.* ¶ 41.)

Defendant Huerta failed to provide medical aid to the decedent, and prevented, delayed, and interfered with other individuals—including the decedent's brother, Christian A. Hernandez and a nurse—who sought to render medical aid after the shooting. (*Id.* ¶¶ 44–48, 114.) After producing her credentials, "[t]he nurse was eventually permitted to approach [the decedent]." (*Id.* ¶ 49.) The decedent died because of his injuries. (*Id.* ¶ 2.)

**II.    Procedural Background**

Plaintiffs filed their initial complaint on July 17, 2024. (Doc. 1.) At the time of filing, Plaintiffs were Maria Del Carmen Hernandez, decedent's mother, in her individual capacity and on behalf of the decedent's statutory beneficiaries, and Christian Hernandez in his capacity as personal representative of David Hernandez ("Decedent's Estate"). (Doc. 1.)

Maria died on August 26, 2024. (Doc. 25 at 2.) Therefore, this Court granted Plaintiff's Motion for Substitution of Real Party of Interest, substituting Christian A. Hernandez as the real party in interest in place of Plaintiff Maria Del Carmen Hernandez.

(Doc. 27.) As a result, Christian brings this action, in his capacity as personal representative, on behalf of (1) the Decedent's Estate, (2) the Estate of Ramon Bernal Hernandez ("Father's Estate"), and (3) the Estate of Maria Del Carmen Hernandez ("Mother's Estate"). (Doc. 20.)

Plaintiffs filed a First Amended Complaint (FAC) on October 14, 2024. (Doc. 20.) Plaintiffs' FAC asserts the following claims: Assault/Battery resulting in Wrongful Death (against Defendant Huerta and vicarious liability against Defendant Hathaway); Negligent Supervision and Training Resulting in Wrongful Death (against Defendants County and Hathaway); Fourth Amendment Unreasonable Use of Force (against Defendant Huerta); Supervisor Liability (against Defendant County); Fourteenth Amendment Loss of Familial Association (against Defendants Huerta and County); Gross Negligence resulting in Wrongful Death (against all Defendants). (*Id.*)

Defendants have filed a partial motion to dismiss (Doc. 32), which has been fully briefed. (Doc. 36; Doc. 37.)

### III. Legal Standard

#### A. Motion to Dismiss Standard

The pleading standard for a motion to dismiss is governed by Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a complaint to contain 'a short and plain statement of the claim showing . . . the pleader is entitled to relief.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). "Dismissal [under Rule 12(b)(6)] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Glazer Cap. Mgmt.*, 63 F.4th at 763 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice," *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

### B. Leave to Amend Standard

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely given." However, leave to amend should *not* be granted when amendment would be futile. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). The Court can recognize amendment would be futile if the pleading could not possibly be cured by the allegation of other facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### IV. Analysis

#### A. Standing to Bring Wrongful Death Claims: Survival Actions

Defendants allege the decedent's parents' loss of consortium claim "ceased to be legally viable" upon their deaths and the FAC fails to plead facts sufficient "to support any other form of wrongful death damages." (Doc. 32 at 4.) Plaintiffs argue Arizona law permits statutory beneficiaries to be compensated for their losses "in proportion to their damages," including both economic and non-economic damages. (Doc. 36 at 4.)

Under Arizona law, a wrongful death claim and a survival claim are separate claims arising from the same incident. *Barragan v. Superior Ct. of Pima Cnty.*, 470 P.2d 722, 725 (Ariz. App. 1970); A.R.S. §§ 14-3110, 12-611; *see also Gandy v. United States*, 437 F. Supp. 2d 1085, 1086 (D. Ariz. 2006). On one hand, a wrongful death claim compensates statutory beneficiaries for their injuries. *Barragan*, 470 P.2d at 724. On the other hand, survival claims permit recovery for damages for the benefit of the decedent's estate. *Id.* A survival claim "passes from the decedent to the personal representative and becomes an asset of the estate." *Gandy*, 437 F. Supp. 2d at 1087.

Legal claims do not necessarily terminate upon the death of a beneficiary. *See* Fed. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party."). Where no statutory beneficiaries exist to bring a wrongful death action, the decedent's estate may recover damages through a survival action. *See* A.R.S. §§ 12-612, 14-3110; *Katz v. Filandro*, 739 P.2d 822, 826 (Ariz. 1987).

"The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action" and "the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Under Arizona law, "[e]very cause of action . . . shall survive the death of the person entitled thereto," except "for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy." § 14-3110. Therefore, the personal representative of an estate may bring most claims, excluding those explicitly excepted, so long as "damages for pain and suffering of [the] injured person" are not at issue. *Id.*

Both parties reference the Arizona Supreme Court's decision in *Katz* for guidance on this issue. (Doc. 32 at 3–4; Doc. 36 at 3–4.) In *Katz*, a mother brought a wrongful death action as the administrator of her daughter's estate. 739 P.2d at 823. The mother alleged she had been "deprived of the love, affection, comfort, care, protection and financial support she would have received from her daughter, had she lived." *Id.* The mother also alleged "special damages in the form of medical and funeral expenses." *Id.* The mother died five days after the complaint was filed. *Id.* The *Katz* court concluded a loss of economic support claim survived the mother's death because it was not explicitly excluded under § 14-3110. *Id.* at 826–27 (limiting the damages to those that had accrued at the time of the mother's death). Moreover, the court explained a cause of action vests in the beneficiary immediately upon a wrongful death. *Id.* This means the claim "becomes a property right in the beneficiary and survives to his representative." *Id.* (reasoning the purpose of the survival and wrongful death statutes is to preserve a complete recovery for loss sustained as a result of wrongful injury and death).

Here, the state-law wrongful death causes of action survive the death of the decedent's parents insofar as Plaintiffs allege the parents incurred economic damages as a result of the wrongful death. Such a claim is not explicitly precluded by Arizona law. *See* § 14-3110. Therefore, the personal representatives of parents' estates are entitled to assert

economic damages on behalf of the estates subject to the time periods between the decedent's death and their own.[2] Nevertheless, parents' estates are barred under § 14-3110 from asserting non-economic damages such as loss of consortium and pain and suffering. (Doc. 20 ¶ 150; *see also* Doc. 20 at 17 (requesting damages including pain and suffering in prayer for relief).) As a result, the Court will dismiss Plaintiffs' claims for non-economic damages with prejudice.

This Court will now address whether Plaintiffs have alleged sufficient facts to support their claims of loss of economic support to survive Defendants' Motion to Dismiss. Defendants argue Plaintiffs' "cursory statement" that both parents suffered "economic . . . damages in an amount to be proven at trial" is unsupported by facts sufficient to show a loss of economic support. (Doc. 37 at 4.) Plaintiffs, however, emphasize the general allegation is sufficient at this juncture. (Doc. 36 at 4.)

"Ordinary pleading rules are not meant to impose a great burden upon a plaintiff . . . ." *Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 337 (2005). Instead, these rules prevent "largely groundless claim[s]" and are intended to give defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 346; *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff who has suffered an economic harm should be able to provide defendants with some indication of the loss and the purported causal connection. *Dura*, 544 U.S. at 348.

Here, Plaintiffs simply assert conclusory damages in support of their claim for economic damages. (Doc. 20 ¶¶ 79–80, 105, 118, 125, 135, 150.) This is not sufficient under Rule 8. Plaintiffs must provide specific facts to support their allegations, such as the specific nature of the harm. In their Response, Plaintiffs mention a "reasonable inference" of costs incurred for funeral and burial expenses, loss of economic support, and other damages. (Doc. 36 at 4.) A "reasonable inference" cannot stand in as a claim for relief. *See* Fed. R. Civ. P. 8. However, it would not be futile to allow Plaintiffs to amend their

---

[2] According to the dates provided by Plaintiffs, 163 days passed between the decedent's and Father's deaths, while 304 days passed between the decedent's and Mother's deaths. (Doc. 36 at 3.)

Complaint. Thus, Plaintiffs' claim for economic damages is dismissed without prejudice and Plaintiffs may amend their Complaint as to this claim if they can allege facts to demonstrate plausible entitlement to economic relief.

### B. Count 1: Assault/Battery

Count One of Plaintiffs' FAC primarily asserts an assault/battery claim against Defendant Huerta. (Doc. 20 ¶¶ 71–80.) However, Plaintiffs also assert Defendant Hathaway is "vicariously liable for Defendant Huerta's acts and/or omissions." (*Id.*) Defendants appear to only take issue with the substance of this count as to Defendant Hathaway and rely upon their survival claim analysis to dispense with this claim as to Defendant Huerta. (Doc. 32 at 4.) Thus, this Court will focus its discussion on Defendant Hathaway only.

Defendants argue the FAC does not set forth facts showing Defendant Hathaway knew of Defendant Huerta's "propensity for shooting suspects without justification." (Doc. 32 at 5.) Plaintiffs state Defendant Hathaway's "knowledge" may be pled generally, reasserting the allegations contained in the FAC. (Doc. 36 at 4–5.)

Under Arizona law, a public entity is immune from claims of vicarious liability for an employee's actions unless it *actually knew* of the employee's propensity for a certain act. A.R.S. § 12-820.05(B); *Tucson Unified Sch. Dist. v. Borek ex rel. County of Pima*, 322 P.3d 181, 185 (Ariz. Ct. App. 2014). Arizona law has extended the definition of "public entities" to include sheriffs under A.R.S. § 12-820(7). *Sanchez v. Maricopa County*, 572 P.3d 101, 110–11 (Ariz. 2025) (concluding county sheriff was a "public entity" and could be sued in his official capacity). The allegations must include facts to show the public entity had actual knowledge of the employee's propensity. *Borek*, 322 P.3d at 184.

Here, Count One turns entirely on whether Defendant Hathaway knew Defendant Huerta had a propensity of "utilizing unjustified and/or unreasonable excessive force." (Doc. 20 ¶¶ 77–78.) Plaintiffs' FAC asserts Defendant Hathaway "knew or should have known of the propensity of Defendant Huerta's conduct." (*Id.* ¶ 78.) These allegations are

too vague and conclusory to justify an inference in Plaintiffs' favor. Therefore, Plaintiffs fail to plead sufficient factual allegations which, if accepted as true, would plausibly show Defendant Hathaway was on notice of Defendant Huerta's specific propensity to use unjustified or unreasonable excessive force. Notwithstanding the operative complaint's deficiencies, the Court does not view this claim as futile because it can envision some set of facts Plaintiffs could allege to support it. Thus, Plaintiffs are granted leave to amend Count One.

### C. Count 2: Negligent Training and Supervision

Plaintiffs bring a claim for negligent training and supervision against Defendants Santa Cruz County and Hathaway. (Doc. 20 ¶¶ 81–94.) Defendants assert Plaintiffs' allegations are conclusory and do not include sufficient facts to survive a motion to dismiss. (Doc. 35 at 5–6.) Plaintiffs argue they are not required to show how Defendants breached their duties under a heightened pleading standard. (Doc. 36 at 5–6; *see* Fed. R. Civ. P. 9(b).)

Negligent training and supervision are state law tort actions that may be brought to hold an employer liable for his or her failure to properly train or supervise an employee. Restatement (Second) of Agency § 213 (1958). For an employer to be held liable for negligent supervision under Arizona law, a plaintiff must demonstrate (1) the employer knew or should have known the employee was not competent to perform the assigned task and (2) the employer's failure to supervise the employee caused the plaintiff's injury. *Rice v. Brakel*, 310 P.3d 16, 21 (Ariz. Ct. App. 2013); *see also Charley v. United States*, 437 F. Supp. 3d 745, 750 (D. Ariz. 2020). The *Rice* Court explained the employer's knowledge—actual or constructive—is essential to determine whether the employer is liable for negligence. *Rice*, 310 P.3d at 21. Moreover, the employer is bound by the knowledge acquired by agents or officers within the scope of their authority and regarding matters over which their authority extends. *Id.*

Here, the FAC asserts Defendants County and Hathaway had a duty to "hire, train, and supervise all employees, including Defendant Huerta." (Doc. 20 ¶ 82.) Additionally,

1  Plaintiffs allege Defendants County and Hathaway had a duty to "properly train and
2  supervise Defendant Huerta" regarding the following matters: interactions with the public;
3  deescalating interactions with the public; utilization of a taser; interactions with individuals
4  suffering from known mental illness; reasonable suspicion and/or probable cause to stop
5  individuals walking on public sidewalks; utilization of excessive force; and medical aid.
6  (*Id.* ¶¶ 85–91.) The FAC further asserts Defendants County and Hathaway breached their
7  duty "by their acts of negligence," which caused the decedent's death.  (*Id.* ¶ 92.)
8  Plaintiffs' allegations—considered within the factual context of this case—are sufficiently
9  plausible to maintain Plaintiffs' claim at this stage. The allegations demonstrate
10 Defendants County and Hathaway held supervisory positions over Defendant Huerta
11 within the scope of their authority. Thus, Defendants' Partial Motion to Dismiss with
12 respect to Count Two is denied.

### D. Count 4: Supervisor Liability

Count Four of Plaintiffs' FAC asserts a supervisor liability claim under 42 U.S.C. § 1983 against Defendant County only. (Doc. 20 ¶¶ 108–119.) Defendants argue Plaintiffs mislabeled this claim, stating Plaintiffs are attempting to assert a *Monell* claim. (Doc. 32 at 6–7.) Plaintiffs' Response does not attempt to clarify which cause of action they intend to bring. (Doc. 36 at 6–7.) In their Reply, Defendants contend Plaintiffs' attempt at a *Monell* claim fails for lack of factual support. (Doc. 37 at 3–4.) Because it is unclear whether Plaintiffs intend to assert a supervisor liability claim, a *Monell* claim, or both, this Court will address each in turn.

*i. Supervisor Liability*

Under § 1983, a supervisor may be held liable for constitutional deprivations committed by another. "Supervisor liability represents a form of personal liability against an individual," not a municipality. *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1222 (D. Ariz. 2003). A supervisor "may be held liable . . . under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."

*Henry A. v. Willden*, 678 F.3d 991, 1003–04 (9th Cir. 2012) (quoting *Starr v. Boca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A supervisor need not be physically present when the injury occurred. *Starr*, 652 F.3d at 1205. The supervisor's participation in a constitutional deprivation "could include his 'own culpable action or inaction.'" *Id.* (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). Allegations must plead the specific personal involvement of a supervisor; simply referring to "Defendants," without further specification as to who committed the conduct at issue, is not sufficient. *Henry A.*, 678 F.3d at 1004.

Supervisor liability exists to regulate supervisory officials' personal action and inaction insofar as it leads to the deprivation of federally protected rights, *McGrath*, 250 F. Supp. 2d at 1222, whereas "municipal liability depends upon enforcement by individuals of a municipal policy . . . caus[ing] the violation of the [plaintiff's] federally protected rights," *id.* at 1222–23 (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Therefore, Plaintiffs are not entitled to bring a supervisor liability claim against Defendant County. Even though Plaintiffs' FAC fails to state a claim in its present condition, this Court will grant leave to amend because this issue could possibly be cured by the allegation of other facts regarding an individual supervisor's involvement in the alleged constitutional violations. If Plaintiffs choose to amend this claim to assert a supervisor liability claim, Plaintiffs must include factual allegations demonstrating a supervisor's personal involvement in the constitutional violation or a causal connection between the wrongful conduct and the violation.

### ii. Monell *Claim*

A *Monell* claim under § 1983 allows plaintiffs to hold a municipality or local government liable for constitutional violations caused by policies, customs, or practices. A plaintiff may prevail against a municipality if an "unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lockett v. County of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020) (quoting *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir.

2014)). Even if a practice is not authorized by written law or express municipal policy, "a plaintiff may be able to prove the existence of a widespread practice . . . 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

To establish municipal liability, a plaintiff must prove "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff's] constitutional right; *and* (4) the policy was the moving force behind the constitutional violation." *Lockett*, 977 F.3d at 741 (emphasis added). A *Monell* claim is contingent upon a violation of constitutional rights. *Id.* To demonstrate a municipality's failure to train its employees amounts to "deliberate indifference" of an individual's constitutional rights, *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted), a plaintiff must prove "a municipal actor disregarded a known or obvious consequence of his action," *Id.* (citation omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted). The "continued adherence" to such a pattern may establish the "conscious disregard" necessary to satisfy this element. *Id.* (citation omitted). Lastly, to show a policy was the moving force behind a violation, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997), a plaintiff must show "the municipal action was taken with the requisite degree of culpability *and* must demonstrate a direct causal link between the municipal action and the deprivation of federal rights," *Id.* (emphasis added).

Here, Plaintiffs plead two constitutional violations sufficient to fulfill the first *Monell* element. (Doc. 20 ¶¶ 108–119.) The FAC alleges Defendant County deprived the decedent of his right to be free from an excessive use of force under the Fourth Amendment. (*Id.* ¶ 117.) The FAC further alleges Defendant County deprived Plaintiffs of "their right to the continued familial and societal relationship with David, as guaranteed by the Fourteenth Amendment." (*Id.*) Regarding the other *Monell* elements, Plaintiffs'

FAC fails to provide facts sufficient to support their allegations. The FAC lists five unconstitutional "official polic[ies]" and "pervasive custom[s] and/or practice[s]." (*See* Doc. 20 ¶¶ 110–14.) While Plaintiffs assert each of these practices and/or customs deprived the decedent of his constitutional rights, the FAC provides no more than conclusory allegations to support its assertions. To successfully plead the second *Monell* element, Plaintiffs may either plead facts (1) to show this incident was sufficient to establish an unconstitutional municipal policy under the guiding principles set forth in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986), or (2) to prove the existence of a widespread practice as explained in *Praprotnik*, 485 U.S. at 127. The Court also finds the deliberate indifference and moving force allegations lack sufficient factual support at this stage, even when viewed in the light most favorable to Plaintiffs.

In summary, the Court finds Plaintiffs have insufficiently stated a *Monell* claim because the FAC fails to include factual allegations in support of a municipal policy that violated the decedent's right to be free from excessive use of force. Moreover, the Court notes it is unclear which policy Plaintiffs contend violated their Fourteenth Amendment right to familial association. Accordingly, the Court dismisses this claim but grants Plaintiffs leave to amend to allege facts regarding the applicable policies, if any, related to each specific constitutional violation alleged.

### E. Count 5: Fourteenth Amendment Loss of Familial Association

In Count Five of the FAC, Plaintiffs assert a § 1983 claim against Defendants Huerta and County[3] for violating the decedent's parents' Fourteenth Amendment right to parent-child familial association. Defendants seek dismissal of this claim for two reasons. First, they contend § 14-3110 "does not permit survivors' estates to bring loss of consortium claims." (Doc. 32 at 8.) Defendants argue this Court must look to state law in determining who has standing to pursue a § 1983 action based on the violation of a constitutional right, citing *Moreland*, 159 F.3d at 369. (*Id.*) Second, Defendants argue Plaintiffs' Fourteenth

---

[3] Because Plaintiffs have asserted a municipal liability claim against Defendant County under *Monell*, *see supra* Section D(ii), the Court will address Count Five as to Defendant Huerta only.

Amendment claim falls short of pleading facts sufficient to show Defendant Huerta acted with a "purpose to harm" the decedent. (*Id.* at 8–9.)

In their Response, Plaintiffs argue *Moreland* allows for Fourteenth Amendment claims even in the absence of a Fourth Amendment survival claim. (Doc. 36 at 8.) Additionally, Plaintiffs contend "a Fourteenth Amendment claim for loss of familial association does not abate under a state law, such as A.R.S. § 14-3110, that limits recovery of non-economic damages for a decedent." (*Id.* at 8–9.) Plaintiffs assert the FAC sufficiently alleges Defendant Huerta acted with a "purpose to harm."

> i. *Standing*

As Defendants correctly explain, under Arizona law, a loss of consortium claim shall not survive the death of an individual. *See* § 14-3110. However, Defendants fail to recognize the distinction between loss of consortium and § 1983 claims. A loss of consortium claim is intended to compensate individuals for the loss of intangible elements of a familial or marital relationship, such as companionship and affection. *Barnes v. Outlaw*, 964 P.2d 484, 487 (Ariz. 1998). Yet the goals of a § 1983 claim are compensation and deterrence. *See Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1058 (D. Ariz. 2020). Here, Plaintiffs bring a § 1983 claim for the loss of familial association under the Fourteenth Amendment. (Doc. 20 ¶¶ 120–35.)

In *Andrich*, the decedent's estate (via its personal representative) *and* three of the decedent's surviving siblings sought to assert § 1983 claims based on violation of the decedent's constitutional rights. 470 F. Supp. 3d at 1059. Because the siblings *did not* assert claims based on violation of *their own constitutional rights*, the court determined the application of § 14-3110's "standing rule (*i.e.*, only the personal representative of the estate has standing to assert claims on behalf of a decedent)" would not undermine § 1983's goals of compensation and deterrence. *Id.* Regardless of whether the siblings were joined as parties, the lawsuit would proceed, and the defendants would face potential liability. *Id.* Therefore, the siblings' claims were dismissed, and the lawsuit was permitted to proceed with the decedent's estate as the remaining claimant. *Id.* at 1060.

In this case, Mother's Estate and Father's Estate (collectively, "Parents' Estates") have standing to assert a Fourteenth Amendment loss of familial association claim against Defendant Huerta only. Such a claim falls under the purview of § 1983—"Every person who . . . causes the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." Unlike the siblings in *Andrich*, who did not assert § 1983 claims based on a violation of their own constitutional rights, here, Parents' estates *do* bring a claim for violation of the parents' constitutional rights.

### ii. Purpose to Harm or Deliberate Indifference

Having determined Parents' Estates have standing to assert the instant § 1983 claim, the Court now turns to whether Plaintiffs' FAC alleges facts showing Defendant Huerta was acting with a "purpose to harm"—one half of the standard delineated in *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). As discussed, Defendants argue it does not.

Official conduct must shock the conscience to give rise to a Fourteenth Amendment claim for loss of familial association. *Porter*, 546 F.3d at 1142; *see also Garcia through AG v. County of Napa*, No. 23-15056, 2024 WL 1734125, at *1 (9th Cir. Apr. 23, 2024). To meet this standard, a plaintiff must allege either an act of *deliberate indifference* or acts done with a *purpose to harm* for reasons unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137; *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018) (finding "[l]egitimate law enforcement objectives include . . . arrest, self-protection, and protection of the public").

The applicable standard depends on whether a situation evolved in a manner permitting "the officer to deliberate before acting" or escalated quickly and required the officer to make a snap judgment. *Porter*, 546 F.3d at 1137. The *deliberate indifference* test applies if the situation evolved in such a way that the officer could deliberate before acting. *Id.* The *purpose to harm* test applies if the situation evolved quickly and the officer had to make a snap judgment. *Id.* at 1139. ("[W]hen an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply.")

- 14 -

Here, the facts provided in the FAC, taken as true, are sufficient to support a deliberate indifference claim against Defendant Huerta. Plaintiff alleges multiple instances of Defendant Huerta's internal decision-making during his interaction with the decedent, including his decision to use his gun instead of his taser, and his decision to reposition himself to remove the residential home from the line of fire. (Doc. 20 ¶¶ 36–38.) Altogether, these facts state a plausible claim for relief. This Court will deny Defendants' Partial Motion to Dismiss with respect to Count Five.

### F. Count 6: Gross Negligence

Plaintiffs allege Defendant Huerta was grossly negligent in his initial interaction with the decedent based on his prior knowledge of the decedent's "mental illness" and "diminished mental capacity and cognitive abilities," as well as Defendant Huerta's "actions and/or inactions" that "inappropriately subjected [the decedent] to an unreasonable risk of serious harm and injury." (Doc. 20 ¶ 137; Doc. 36 at 12.) Defendants assert (1) Mother's and Father's Estates are not permitted to bring a gross negligence claim against Defendants, and (2) the gross negligence claim fails on the merits. (Doc. 32 at 9–10.)

As a threshold matter, the Court finds the personal representative of decedent's estate can bring a gross negligence claim. Under Arizona law, the purpose of a survival claim is "to prevent the tortfeasor's liability from ceasing upon the injured person's death." *Barragan*, 470 P.2d at 724. As previously discussed, Arizona's survival statute, § 14-3110, provides "[e]very cause of action" may be brought by a person's personal representative upon their death. Section 14-3110 precludes the survival of claims for "pain and suffering," "breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium, [and] invasion of the right of privacy." None of those carve outs apply here. In this case, the survival claim belongs to Decedent's Estate. Parents' Estates are not permitted to bring a gross negligence claim. Therefore, this Court finds it is appropriate for only the personal representative of Decedent's Estate to bring this claim insofar as economic damages are sufficiently related to the gross negligence.

- 15 -

Turning to the substance of the allegations, negligent use of intentionally inflicted force is not a cognizable claim. Both parties cite *Ryan v. Napier*, 425 P.3d 230 (Ariz. 2018), as the controlling case on this type of gross negligence claim. Plaintiffs assert *Ryan* permits the dual pleading of negligence and battery claims so long as each distinct theory is appropriately pled with evidence to support the "alternate scenarios." (*See* Doc. 36 at 11; *Ryan*, 425 P.3d at 238.) While *Ryan* does provide for the existence of a "negligence claim for conduct . . . independent of the intentional use of force *or* . . . negligence and battery as alternate theories," Plaintiffs misconstrue the ultimate holding. *Ryan*, 425 P.3d at 238 (emphasis added). Had the plaintiff in *Ryan* presented evidence to support a finding the officer "unintentionally" dropped the police dog's leash, resulting in the dog attacking the plaintiff, a negligence claim would have been appropriate. *Id.* But the plaintiff's argument fell short, only providing facts to support an intentional battery. *Id.* The *Ryan* court concluded "negligence and intent are mutually exclusive grounds for liability." *Id.* at 236 (citing Dan B. Dobbs et al., *The Law of Torts* § 31, at 77 (2d ed. 2011) ("Any given act may be intentional or it may be negligent, but it cannot be both.")).

Both parties also reference *Torres v. Maricopa County*, No. 1 CA-CV 23-0768, 2024 WL 4442857 (Ariz. Ct. App. Oct. 8, 2024). Both *Ryan* and *Torres* expressly reject the notion that an officer's internal evaluation about whether to use force and the decision to do so can establish negligence. *Ryan*, 425 P.3d at 236–37; *Torres*, 2024 WL 4442857, at *3. *Torres* reiterated the *Ryan* court's reasoning—internal evaluations are "part and parcel" of the subsequent intentional infliction of physical harm and cannot amount to negligence. 2024 WL 4442857, at *3.

Here, Plaintiffs do not assert any facts to support a negligence claim distinct from Defendant Huerta's intentional use of force. Plaintiffs do not provide case law to support their position that gross negligence can coexist with an intentional use of force. Like the plaintiff in *Ryan*, Plaintiffs here fail to appropriately plead an alternate scenario to establish their gross negligence claim. Plaintiffs merely reference the allegations set forth in their First Amended Complaint. (Doc. 36 at 12.) Because Plaintiffs fail to allege facts

- 16 -

1  establishing gross negligence, the Court will dismiss this claim. However, because it is
2  possible there are separate facts to support an alternative theory of gross negligence, the
3  Court will grant Plaintiffs leave to amend.

### G. Doe Defendants

Plaintiffs have listed 20 unnamed Doe and Roe Entities as Defendants in their First Amended Complaint. (Doc. 20.) Defendants assert Plaintiffs improperly name Doe Defendants in their FAC. (Doc. 32 at 11–12.) Plaintiffs do not address this issue in their Response.

Generally, the use of anonymous defendants is disfavored. *See* Fed. R. Civ. P. 10(a); *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 641 (D. Ariz. 2020). Plaintiffs are required to include the names of all parties in the action. Here, Plaintiffs do not assert any factual allegations against the anonymous defendants and do not state they are investigating the identity of any anonymous defendants. Accordingly, the Court will dismiss the Doe Entities I–X and Roe Entities I–X with prejudice.

### H. Leave to Amend Complaint for Failure to Render Medical Aid

In their Response, Plaintiffs request leave to amend the FAC to provide for the addition of a separate claim for failure to render medical aid. (Doc. 36 at 12.) In their FAC, Plaintiffs alleged "Defendant Huerta failed to render life-saving medical aid and prevented others from rendering life-saving medical aid to [the decedent]." (Doc. 20 ¶ 133.) Plaintiffs also included factual allegations regarding Defendant Huerta's actions immediately following the shooting, which the Court finds sufficient to state a plausible claim for relief. (*See id.* ¶¶ 44–51.)

To determine whether leave to amend should be granted, courts consider several factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposition party by virtue of the allowance of the amendment, [and] futility of amendment." *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1152 (D. Ariz. 2016) (alteration in original) (quoting *Schlacter-Jones v. Gen. Tel.*, 936 F.2d 435, 443 (9th Cir. 1991)). These

factors weigh in favor of allowing Plaintiffs to add this claim in an amended complaint, especially considering Plaintiffs are otherwise granted leave to amend their other claims. Therefore, the Court grants Plaintiffs leave to amend to add a claim for failure to render medical aid.

### V.     Conclusion

**IT IS ORDERED** Defendants' Partial Motion to Dismiss (Doc. 32) is **DENIED IN PART and GRANTED IN PART.** The Motion (Doc. 32) is **DENIED** as to the Negligent Training and Supervision Claim and Fourteenth Amendment Loss of Familial Association Claim (Counts 2 and 5 of Plaintiffs' FAC) and **GRANTED** insofar as Parents' Estates claim non-economic damages, as to the Assault/Battery Claim as asserted against Defendant Hathaway based on a vicarious liability theory, and as to the Doe Defendants.

**IT IS FURTHER ORDERED** Plaintiffs' allegation of economic damages on behalf of Parents' Estates, as an element of Counts 1 and 6, and their Assault/Battery Claim against Defendant Hathaway under a vicarious liability theory, Supervisor Liability/*Monell* Claim, and Gross Negligence Claim (Counts 1, 4, and 6 of Plaintiffs' FAC) are **DISMISSED without prejudice and with leave to amend.** Doe Defendants are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** Plaintiffs' request for leave to amend to add a claim of Failure to Render Medical Aid is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiffs may file a Second Amended Complaint no later than **September 29, 2025**. If Plaintiffs choose to do so, they must limit their complaint in line with the Court's guidance above and must reassert any and all claims on which they wish to proceed (including Count 3, which was not subject to the Motion to Dismiss). This Second Amended Complaint will supersede any prior complaint.

Dated this 29th day of August, 2025.

Honorable Scott H. Rash
United States District Judge